UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY SHARP,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THE WALT DISNEY COMPANY et al.,<br><br>　　　　Defendants. | Case No. 2:23-cv-00820-SB-MAR<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [DKT. NO. 20] |

　　　　Plaintiff Jimmy Sharp was a stunt performer and stunt coordinator on popular television shows.  After he participated in a human resources investigation arising from a complaint into his billing practices made by Defendant Nissa Diederich, he claims that Diederich retaliated against him, leading to his permanent removal from all shows under her control.  Plaintiff alleges that when Diederich became the head of production at Defendant The Walt Disney Company, Plaintiff was terminated from all productions run by Defendants.  Plaintiff brought this case in Los Angeles Superior Court alleging causes of action arising from his termination and purported "blacklisting" by Defendants.  Defendants removed this action to federal court, and Plaintiff now moves to remand it to state court.  Dkt. Nos. 1, 20.  For the reasons described below, Plaintiff's motion is granted.

I.

　　　　Plaintiff worked on various productions for Twentieth Century Fox Film Corporation (referred to by Plaintiff, as Fox or Fox Studios), which was acquired by Defendant The Walt Disney Company (Disney).  Dkt. No. 30 (FAC) ¶ 1, 13; Dkt. No. 5 ¶ 5.  Plaintiff alleges that, in 2017, Diederich made an internal complaint at Fox that Plaintiff was billing improperly and being favored because his father was the head of production.  FAC ¶ 16.  The human resources (HR)

department conducted a formal investigation and concluded that Plaintiff did not violate any policies or engage in improper conduct (HR Investigation). FAC ¶ 18. Plaintiff alleges that Diederich then "set out on a campaign to retaliate" against him by making misrepresentations about him and "blacklist[ing]" him from working on additional productions. FAC ¶ 22. Plaintiff alleges that Diederich's conduct is evidenced by his history of working on certain shows and for certain producers, and that he was subsequently not given those same opportunities. FAC ¶¶ 22–24 (alleging that Plaintiff worked as the stunt coordinator on many shows created by Ryan Murphy and that Diederich's acts "caused Jimmy to never work on another Ryan Murphy show"). Plaintiff alleges that when his father stepped down as head of production, Defendant Diederich replaced his father and "mounted a campaign to deliberately disrupt" Plaintiff's employment opportunities. FAC ¶ 27. Diederich allegedly removed Plaintiff from a preapproved list of stunt coordinators and successfully threatened third parties not to hire him. FAC ¶ 28–32. Plaintiff alleges that as a result of Diederich's conduct, he suffered financial, physical, and emotional harm. FAC ¶ 34.

  Plaintiff brought four causes of action against Defendants in state court: (1) retaliatory discharge and wrongful termination in violation of public policy under California Labor Code § 1102.5; (2) intentional interference with prospective economic advantage, (3) negligent interference with prospective economic advantage, and (4) misrepresentation preventing employment in violation of California Labor Code § 1050. Defendants assert that, as a stunt coordinator and stunt performer and member of the Screen Actors Guild-American Federation of Television and Radio Artists (SAG-AFTRA), Plaintiff's employment was governed by four collective bargaining agreements (together, CBAs) incorporated into Plaintiff's personal service agreements to work on various productions. *See* Dkt. No. 5 at Exs. A–D. Defendants removed this case on the theory that Plaintiff's claims require the Court to interpret the CBAs and are therefore preempted under § 301(a) of the Labor Management Relations Act. Dkt. No. 1. This motion followed, which Defendants oppose. Dkt. No. 23. At the hearing on this motion, Plaintiff represented that his first cause of action was limited to retaliation based on Diederich's blacklisting him from future employment, rather than any termination by Defendants in violation of his employment contracts. Plaintiff filed a First Amended Complaint, limiting the first cause of action to "retaliation" under Labor Code § 1102.5.

2

II.

Removal to federal court is proper where the federal court would have original subject matter jurisdiction over the complaint. 28 U.S.C. § 1441. "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). A case must be remanded to state court if it appears at any time before final judgment that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

Although a federal question must normally appear on the face of the complaint, there is an exception to this rule for complete preemption—i.e., where a federal statute has such strong preemptive force over a state law claim that "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). The complete preemption doctrine extends to claims preempted by § 301 of the LMRA. *Castillo v. Long Beach Mem'l Med. Ctr.*, 132 F. Supp. 3d 1194, 1198 (C.D. Cal. 2015). Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). This provision has been construed to cover state suits that require interpretation of labor agreements. *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F. 3d 1102, 1108 (9th Cir. 2000).

To determine whether the LMRA preempts a cause of action, courts in the Ninth Circuit employ a two-part test. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, a court determines "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and . . . [the] analysis ends . . . ." *Id*. However, if "the right exists independently of the CBA, [a court] must still consider whether it is nevertheless substantially dependent on analysis of a collective-bargaining agreement. If such dependence exists, then the claim is preempted by section 301; if not, then the

claim can proceed under state law." *Id*. at 1059–60 (internal quotations and citations omitted).

The first part of the *Burnside* test is not contested. That is, Defendants do not contend that the CBAs confer any rights that were allegedly violated in this case. Rather, the jurisdictional dispute between the parties focuses on the second part of the *Burnside* test—namely, whether the claims asserted in the complaint will require an interpretation of the CBAs. A claim is "substantially dependent on analysis of a collective bargaining agreement" if it requires a court to "interpret" the agreement. *Balcorta*, 208 F. 3d at 1108. Interpretation means "something more" than "look[ing] at," "consider[ing]," "refer[ring] to," or "apply[ing]" the agreement. *Id*. "[R]eading and applying relevant, unambiguous provisions of [a] CBA" does not involve interpretation. *See Kobold v. Good Samaritan Regional Med. Ctr.*, 832 F.3d 1024, 1040 (9th Cir. 2016) (holding that application of unambiguous terms in a CBA is not interpreting the agreement).

Defendants contend that each claim brought by Plaintiff requires an interpretation of the CBAs. Plaintiff's first claim in the FAC is for retaliation under California Labor Code § 1102.5 based on his participation in the HR Investigation. To assert a retaliation claim, "[P]laintiff must establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action." *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 982 (9th Cir. 2022) (quoting *Vatalaro v. Cnty. of Sacramento*, 79 Cal. App. 5th 367, 379 (2022)). California courts have interpreted an adverse employment action to include any actions that materially affect the terms and conditions of a person's employment. *See Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378 (2005), *disapproved of on other grounds by Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703 (2022).

Plaintiff alleges that after the HR Investigation and subsequent change of leadership at Fox, Diederich removed Plaintiff from a list of preapproved stunt coordinators and threatened producers not to hire him. Plaintiff alleges that, as a result of those actions, he was not hired to work on productions on which he previously had worked. Defendants contend that once work on a certain project ended, it was within their rights to choose not to hire Plaintiff for further work. However, Plaintiff's allegations are not just that he was not rehired, but that he was not rehired *because* of allegedly retaliatory actions by Diederich. Defendants do not address how the Court will be required to interpret the CBAs to determine whether Diederich's actions were improper or whether Plaintiff was prevented

from further employment in retaliation for his participation in the investigation. Therefore, Defendants have not met their burden to show that the Court will need to interpret any specific provision of the CBAs to conclude whether Defendants retaliated against Plaintiff in violation of § 1102.5. *See Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting the "near-canonical rule that the burden on removal rests with the removing defendant").

Plaintiffs remaining claims likewise do not require the Court to interpret the CBAs. The Court considers together Plaintiff's intentional and negligent interference with economic advantage causes of action. Claims for intentional interference with economic advantage require the plaintiff to show "(1) the reasonable probability of a business opportunity, (2) the intentional interference by defendant with that opportunity, (3) proximate causation, and (4) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner." *Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001) (internal citations omitted). Negligent interference with economic advantage requires a plaintiff to demonstrate that "(1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 786 (1997).

Both causes of action require Plaintiff to prove that he had an economic relationship or business opportunity that was harmed by Defendants' negligent or intentional conduct. Plaintiff alleges that Diederich "blacklisted" him by placing him on a "do not hire list" and removing him from a list of approved stunt coordinators, *see* Dkt. Nos. 25-2, FAC ¶ 32, and that Defendants' refusal to continue to hire him disrupted his expectation that he would receive future work (created by previous employment on certain productions). The preapproved stunt coordinator list is not described or enumerated in the CBAs, and Defendants only conclusorily assert that Plaintiffs' claims require interpretation of the CBA. Defendants rely on *Hernandez v. Pac. Mar. Ass'n*, 379 F. App'x 668 (9th Cir. 2010), in which the Ninth Circuit affirmed the district court's finding that removing the plaintiff from a dispatch list for laborers required interpretation of the

relevant CBAs.  However, in that case, explicit rules incorporated into the relevant CBAs governed the dispatch list.  Here, by contrast, Defendants have not pointed to a provision of the relevant CBAs that describes how studios use and select employees from preapproved lists.  Whether Plaintiff had an economic opportunity by virtue of his placement on the list and whether that opportunity was interfered with by his subsequent removal from the list do not require interpretation of the CBAs.  Plaintiff also alleges that Diederich told various producers that they were not permitted to hire Plaintiff.  FAC ¶¶ 29–32.  Defendants similarly point to no provision in the CBA that permits or prohibits that conduct.  Therefore, the Court finds that Plaintiff's second and third causes of action are not preempted.

Plaintiff's fourth cause of action can also be determined without interpretation of the CBAs.  Plaintiff brings a claim under California Labor Code § 1050, which makes it unlawful for a person to prevent a former employee from obtaining employment by making misrepresentations about them or their employment.  *See also* Cal. Lab. Code. § 1054.  Plaintiff alleges that Diederich told producers they were not allowed to hire Plaintiff for future jobs.  FAC ¶¶ 29–32.  Defendants have not cited any applicable CBA provision that addresses whether a studio executive can encourage producers not to hire a stunt performer or coordinator, whether a stunt performer or coordinator can be added to the list of preapproved workers, or whether participants in an HR investigation can share details of those investigations (the alleged misrepresentations Diederich made to producers).  Therefore, Plaintiff's § 1050 claim is not preempted because it does not appear to require an interpretation of any applicable CBA provision.

*   *   *

Because Defendants have not demonstrated that resolving Plaintiff's claims will require the Court to interpret the CBAs governing Plaintiff's employment, Plaintiff's motion to remand is GRANTED.

IT IS SO ORDERED.

Date: April 28, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge